# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT PHILLIPS, | Case No. 1:06-cv-0413 TAG |
| Plaintiff, | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| vs. | |
| | ORDER REMANDING THE CASE PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | |
| Defendant. | ORDER DIRECTING THE CLERK TO ENTER JUDGMENT FOR PLAINTIFF AND AGAINST DEFENDANT |

Claimant Albert Phillips ("Claimant") seeks judicial review of an administrative decision denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 et seq. Pending before the Court is Claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Claimant filed his complaint on April 5, 2006 (Doc. 1), and his opening brief on March 21, 2007. (Doc. 20).[2] The Commissioner filed his opposition to the appeal on June 11, 2007. (Doc. 23). Claimant did not file a reply brief. (See case docket).

Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties consented to proceed before a United States Magistrate Judge, and, by an order dated December 15, 2006, this action was assigned to the United States Magistrate Judge for all further proceedings. (Doc. 19).

---

[1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

[2] Claimant refers to his opening brief as a motion for summary judgment. (Doc. 20). Although briefs filed in Social Security cases previously were deemed summary judgment motions, for several years this Court has termed the documents as "opening briefs," "responses" or "oppositions," and, "reply briefs." This memorandum opinion and order continues this trend.

**JURISDICTION**

On July 16, 2002, Claimant protectively filed for SSI. (AR 85). He filed his SSI application on July 20, 2002, alleging an onset date of September 1996. (AR 86-89, 102). His application was denied initially and on reconsideration. (AR 39, 42).

After timely requesting a hearing, Claimant and his counsel appeared before Administrative Law Judge ("ALJ") James Ross on December 9, 2003. (AR 65, 302-324). On February 24, 2004, the ALJ issued a written decision ("2004 decision") finding that Claimant was not disabled for purposes of SSI payments. (AR 43-50). On June 23, 2004, the Appeals Council granted Claimant's request for review, vacated the 2004 decision, and remanded the case to ALJ Ross with instructions that he, inter alia, obtain testimony from a vocational expert.[3] (AR 76-77).

The ALJ held a second hearing on April 14, 2005, at which time he elicited testimony from a vocational expert pursuant to the Appeals Council's order. (AR 325-346). On August 16, 2005, ALJ Ross issued a decision ("2005 decision") in which he again concluded that Claimant was not eligible for benefits under Title XVI of the Act. (AR 10-23). The Appeals Council denied Claimant's request for review on February 13, 2006. (AR 4-6). The Appeals Council's decision, therefore, became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). The initiation of an appeal in the district court must be commenced within sixty (60) days of the Appeal Council's decision. Id. On April 5, 2006, Claimant timely filed his complaint. (Doc. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcripts, the ALJ's decisions, and the briefs filed by Claimant and the Commissioner, and, therefore, will only be summarized here. In his initial application, Claimant alleged that he could not work because, in 1994, he started to suffer from a bulging disc and arthritis in his spine, the latter of which progressively degenerated. (AR 86).

///

---

[3] The Appeals Council ordered the ALJ, on remand, to (1) obtain additional information from Dr. Alexander Austria, including the length of time Dr. Austria treated Claimant and clinical findings supporting the doctor's opinion; (2) further consider the opinions of treating and examining physicians, and explain the weight given each; (3) further evaluation Claimant's mental impairments; and (4) utilize a vocational evidence to identify jobs that an individual with Claimant's limitations would be able to perform. (AR 76-77).

1  Claimant added that his impairments caused him constant, severe pain in his legs, neck, back, head,
2  hands, arms, and joints, which made him so irritable that he isolated himself.  (AR 88).
3         At the April 14, 2005 administrative hearing, Claimant testified that he was born on December
4  15, 1967, making him 37 years old on the date of the ALJ's August 2005 decision.  (AR 10, 328-329).
5  Claimant testified that he completed the twelfth grade and obtained a GED.  (AR 329).  He reported that
6  he lives with his two children and their mother, receives AFDC for the children, and is on MediCal.  (AR
7  333).  Claimant further testified that he last worked in 1997 as a carpet layer, but he only held the job
8  for a few days because he hurt his back.  (AR 329-330).  Regarding his work history, Claimant stated
9  that, in addition to laying carpet, he had a seasonal job doing road construction, and several temporary
10 labor jobs, all of which required that he constantly lift items weighing in excess of fifty pounds.  (AR
11 330).   Claimant testified that the medical ailments that preclude him from working include a bad back,
12 which "goes out" when he tries to do anything and causes him constant, unbearable back pain, which
13 prevents him from standing or sitting up straight.  (AR 331).  He further testified that he has pain due
14 to joint problems in both of his shoulders and can interfere with his ability to lift his arms.  (AR 334).
15 In addition, Claimant stated that he has gout, or "gouty arthritis," which prevents him from walking
16 because his feet become swollen.  (AR 331).  He reported that he cannot wear shoes and, per his doctor's
17 orders, has been using a crutch for the last year and one-half.  (AR 332).  Claimant further testified that
18 the medication he was prescribed only lessens the swelling temporarily.  (Id.).  He added that, in 1994,
19 he tore the ligaments in his right wrist, for which he underwent surgery.  (AR 334, 336).  Claimant
20 explained that his pain medications cause diarrhea, and reported that he attempted physical therapy, but
21 it was too painful.  (AR 336).  Further, in addition to his medical impairments, Claimant testified that
22 he has psychological problems, for which he saw a therapist for  several months in 1999, then stopped
23 until September 1994, when he resumed weekly therapy sessions.  (AR 333, 342).  He explained that
24 he started to see a therapist again because he felt that he inappropriately took problems and pain out on
25 his children.  (AR 341).
26        Regarding his daily activities and limitations, Claimant testified that his pain prevents him from
27 walking or standing for a more than three or four minutes.  (AR 335-337).  He explained that, if he has
28 to walk, he stops as soon as possible.  (AR 337).  This, in turn, affects his ability to cook and do other

things, and necessitates that he lays down with his legs elevated to decrease the swelling and pain. (AR 336). Claimant also testified that he has problems sitting. (AR 337). (Id.). In response to his attorney's questions, Claimant responded that he cannot lift anything heavier than a milk jug, and he cannot "kneel, stoop, or squat to the ground without pain, without [his] crutches." (Id.). He testified that his typical day is laying on his back with his foot under a pillow. (AR 337-338). Claimant stated that he does no housework or cooking, and has problems with his personal hygiene and dressing himself. (AR 328). In addition, despite the surgery to repair the torn ligaments in his right wrist, he still has problems holding, grasping, and grabbing things. (AR 337-338). Claimant further testified that his wrists, fingers, and feet become numb and ache. (AR 338-339). He reported that he has no social life and does not exercise. (AR 339). Psychologically, he feels worthless and suicidal, has paranoid thoughts and visual hallucinations, is not interested in anything, finds it difficult to concentrate or remember things, has crying spells, and, occasionally, visual hallucinations and problems concentrating and remembering things. (AR 339).

After a discussion between Claimant's attorney and the ALJ, it was determined that the court would issue a request for additional information to Claimant's previous treating physician, Dr. Austria, as ordered by the Appeals Council. (AR 342-43). The ALJ determined not to question the Vocational Expert ("VE") until the additional information from Dr. Austria, and the records from Claimant's current doctor, were obtained, and then only if necessary, a decision to which Claimant's attorney agreed. (AR 343). The Claimant's attorney, however, requested that they comply with the remand order to the extent that the Appeals Council required that they elicit testimony from the VE regarding Claimant's mental capacity to work. (AR 344). The ALJ agreed. (Id.).

Claimant's attorney questioned VE Cheryl Chandler as to whether there were any jobs available that a 37-year-old with a GED and the same work background as Claimant's, capable of performing simple, repetitive tasks but not detailed and complex work, and who would not have regular attendance or be able to fulfill a normal work day, could perform. (AR 344). The VE responded that the latter two limitations prevented the described individual from working. (Id.).

///

///

4

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision to deny benefits, made through an ALJ, when the decision is based on the proper legal standards and is supported by substantial evidence. Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is more than a mere scintilla but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989) (quotations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Webb, 433 F.3d at 686 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). Moreover, such "inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" are accorded the same consideration as is substantial evidence as defined above. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quotation and citation omitted).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that would support a finding of either disability or non-disability, the Commissioner's decision is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).

## RELEVANT LEGAL FRAMEWORK

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that he is not

only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**Sequential Evaluation Process**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. § 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(c).

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 416.920(e). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. § 416.920(f) and (g). See Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a prima facie case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). In terms of the five-step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (italics in original). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from

engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ADMINISTRATIVE FINDINGS**

The ALJ found at step one that Claimant has not engaged in substantial gainful activity since his alleged onset date of July 16, 2002. (AR 14, 22). At step two, the ALJ determined that Claimant suffers from the following impairments, which he considers severe: low back pain, neck pain, episodic gout, mild residuals from surgery to his right wrist, and situational depression. (14, 22). At step three, the ALJ found that Claimant's impairments, singly or in combination, are not sufficiently severe to satisfy the criteria necessary to meet or equal a listed impairment, 20 C.F.R. Pt. 404, Subpt. P, App. 1. (AR 14, 22).

The ALJ then determined that Claimant retains the residual functional capacity ("RFC") to lift 20 pounds occasionally; lift and carry 10 pounds frequently; stand, walk, and sit for six hours in an eight hour day; and climb, balance, stoop, kneel, crouch, and crawl occasionally. (AR 14, 22). ALJ Ross added that Claimant should avoid exposure to extreme cold, and is limited to simple repetitive tasks with minimal interaction with the public. (AR 14, 22). In reviewing the evidence under the Psychiatric Review Technique Form ("PRTF"),[4] the ALJ stated that Claimant is "mildly impaired in his activities of daily living; moderately restricted in his ability to maintain social functioning; moderately impaired in his ability to maintain concentration, persistence, and pace; and has had no episodes of decompensation." (AR 14). The ALJ did not explicitly incorporate the PRTF evaluation in Claimant's overall RFC assessment. (See AR 14, 22). The ALJ further found that Claimant's statements regarding his subjective limitations were not entirely credibly when evaluated under Social Security Ruling ("SSR") 96-7p. (AR 19, 22). At step four, the ALJ determined that Claimant was not able to perform his past relevant work. (AR 14, 22). At step five, the ALJ found that, given Claimant's age, education, and RFC to perform most available light work, and using Medical-Vocational Rule 202.20 as a

---

[4] The Psychiatric Review Technique Form is prepared as part of the DDS's nonexamining physician's assessment. (See AR 201-14).

7

framework, there were a significant number of jobs available in the national economy that Claimant could perform. (AR 22-23). Accordingly, the ALJ found that Claimant was not disabled and, thus, not eligible for SSI payments. (AR 23).

## ISSUES

Claimant raised the following issues for consideration in his opening brief:

(A)   The ALJ improperly considered Claimant's mental impairments; and

(B)   The ALJ did not pose a complete hypothetical question to the VE.

As discussed above, this Court must uphold the Commissioner's determination that a claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**(A)   Claimant's Mental Impairments**

In his brief, Claimant argues that the ALJ improperly considered Claimant's mental health impairments and related limitations by giving substantial weight to the DDS physician's assessment over the evaluations and opinions submitted by Claimant's treating therapist and examining consultants. (Doc. 20, pp. 7-9). Claimant points out that the ALJ rejected the consultant's evaluations, in which mental-health doctors opined that Claimant's mental impairments prevented him from "maintaining adequate workplace relationships or having the ability to complete a normal workday or respond appropriately to a routine work setting," without providing legally sufficient reasons. (Doc. 20, pp. 7-8). Claimant further asserts that the ALJ erred in relying on the older, rather than the more recent, DDS assessment.[5] (Doc. 20, pp. 8-9). Finally, Claimant avers that the ALJ committed legal error by substituting his lay opinion for those of medical professionals and "parceling" the evidence so that it would support the ALJ's decision that Claimant was not disabled. (Id. at 8-10).

The courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (examining consultants) and those who neither

---

[5] The other DDS assessment in the administrative record is a Physical Residual Functional Capacity ("RFC") Assessment dated December 18, 2002. (AR 184-91). Claimant apparently confuses the date that the Mental RFC Assessment was prepared by Dr. Luu (January 2, 2003) and the date it was affirmed by Dr. Marina Vea (May 6, 2003). (See AR 197).

8

examine nor treat the claimant (nonexamining physicians). Lester v. Chater, 81 F.3d 821, 839 (9th Cir. 1996). A treating physician's opinion generally is given special weight because of her familiarity with the claimant and his condition. Fair v. Bowen, 885 F.2d 597, 604-605 (9th Cir. 1989). Thus, more weight is given to a treating physician than an examining consultant. Lester, 81 F.3d at 830. In order to reject the opinion a treating physician, the ALJ must provide "clear and convincing" reasons. Fair, 885 F.2d at 604-05. Where a treating physician's opinion is contradicted by another doctor, the ALJ may reject the treating physician's opinion only if he provides "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

Similarly, an ALJ must provide specific, legitimate reasons that are supported by substantial evidence for rejecting an examining physician's evaluation or opinion. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citations and quotations omitted); see also, Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995) ("An ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence").

When there is "substantial evidence" in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to "controlling weight." 20 C.F.R. § 416.927(d)(2). In that event, the ALJ is instructed by § 416.927(d)(2) to consider the factors listed in § 416.927(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. § 416.927(d)(2)(i)-(ii). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; Orn v. Astrue, 495 F.3d 633 (9th Cir. July 16, 2007). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Id. A nonexamining physician's opinion generally cannot be accorded more weight than those of examining or treating physicians. Lester, 81 F.3d at 830; but see Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of

the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.")

In the instant case, Claimant provided two opinions, dated April 7 and May 10, 2007, respectively, from Roxanne M. Fackler, a licensed marriage and family therapist ("LMFT") who is the director of Angel Steps, the facility that Claimant attends for psychological counseling, and, apparently, Claimant's treating therapist. (AR 242-243, 246-247). According to Claimant's testimony, he resumed weekly counseling sessions in September 2004. (AR 333, 342). In her opinion letters, Ms. Fackler diagnosed Claimant as suffering from post-traumatic stress disorder, panic disorder with agoraphobia, and chronic major depressive disorder. (AR 242, 247). Ms. Fackler also opined that Claimant would be incapable of maintaining or sustaining a normal work environment due to his anxiety, irritability, relationship problems, and social isolation. (AR 242, 246). The administrative record contains no progress notes, treatment records, or standardized test results from Angel Steps. (See generally Administrative Record).

Claimant underwent two examining consultations by different psychiatrists. (See AR 174-179, 238-241). Dr. Shohreh Ghaemian, a Board-Eligible psychiatrist, examined Claimant on November 16, 2002. (AR 274-279). Dr. Ghaemian reported that Claimant cooperated throughout the consultation, informing Dr. Ghaemian that his primary non-medical problem was depression, of which he had a long history. (AR 174). Claimant also stated that he attempted suicide in 1996 after his father died, but no longer had suicidal or homicidal ideation, although since he was forced to shoot someone to defend himself and his family, he has been scared, anxious, paranoid, angry, isolated, and suffered some visual and auditory hallucinations. (AR 174-175). Dr. Ghaemian observed that Claimant had not taken his prescription pain medications. (AR 175).

On examination, Claimant's thought process was cohesive and coherent; he spoke normally and the content of his speech was relevant; he was oriented to time, date, person, and place; his past memory was intact but his recent memory was impaired, i.e., when asked to remember three words, he was able to remember them but it took him longer than is usual; his concentration, abstract thinking, insight and judgment were fair to good. (AR 177-178). When asked, Claimant responded that he had never abused

drugs and only consumed alcohol socially. (AR 176). Dr. Ghaemian diagnosed Claimant as suffering from a mood disorder, not otherwise specified, with moderate to sever stressors including chronic pain, social isolation, financial tightness, a long history of depression without treatment or current symptoms, multiple incarcerations, and a Global Assessment of Functioning ("GAF") of 70.[6] (AR 178). In addition, he reported that Claimant suffered from vague paranoia and non-active psychosis, and recommended referral to a psychiatrist and possible psychotropic medication. (AR 178-179). With respect to Claimant's limitations, Dr. Ghaemian opined that, based on the objective examination, Claimant could manage his funds and he could perform "simple, repetitive tasks on a regular basis in a work-like environment," but, due to his lack of education and employment experience, would not be able to perform detailed, complex jobs. (AR 178-179). Dr. Ghaemian, however, opined that Claimant would not be able to fulfill a complete workday or "maintain regular attendance in a job setting." (AR 179). Finally, the doctor concluded that Claimant would have difficulties with the routine stressors of a job and dealing with his supervisor and others due to his irritability and anger, although he qualified the latter by emphasizing that Claimant was not irritable or hostile during the consultation. (Id.).

On September 27, 2004, Dr. Iyengar Malini, a Board-Certified psychiatrist, performed the second examining consultation regarding Claimant's mental health. (AR 238-241). In his report, Dr. Malini stated that Claimant took the bus and got lost, resulting in his arriving late and frustrated. (AR 128). In addition, Claimant stated that he typically was angry and irritable, and, his gout currently caused him severe pain that distracted him from the interview. (Id.). According to Claimant, he was homeless because his family kicked him out of the house. (Id.).

Dr. Malini stated that he reviewed Dr. Ghaemian's 2002 evaluation and diagnoses. (Id.). He noted that Claimant currently was in therapy, allegedly because of his anger, and had brought a mental status

---

[6] The Global Assessment of Functioning ("GAF") reflects the "clinician's judgment of the individual's overall level of functioning and includes psychological, social and occupational functioning." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 30 (4th ed. 1994). A GAF of 70-61 is characterized as: "Some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 12 (3d ed. Rev. 1987). However, neither Social Security regulations or relevant caselaw requires an ALJ to consider a Claimant's GAF score when determining his mental RFC. See 20 C.F.R. 416.920a; Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002). Nonetheless, there is no indication that considering a Claimant's GAF score constitutes error.

form completed by his therapist – Ms. Fackler – with him. (Id.). According to Dr. Malini, Ms. Fackler concluded that Claimant could not "follow simple or complex instructions, and his ability to interact with coworkers and supervisors are impaired. He is unable to sustain an ordinary routine without special supervision. . . . His concentration and memory is like 'crap.' I cannot focus on anything." (AR 238-239). During Dr. Malini's examination, Claimant acknowledged experimenting with drugs and alcohol, but refused to discuss the specifics. (AR 239). Claimant stated that he was born in Bakersfield, CA, his father passed away, and he has no contact with his mother and siblings. (Id.). Dr. Malini observed that Claimant was "extremely irritable" and uncooperative; his speech was coherent and of normal volume and rate, but vague; his affect was appropriate but blunted; he was oriented to time, place, and person; his thinking was goal-oriented and logical; he was not overtly psychotic; his past memory was fine but his recent memory was impaired in that he could not recall three words after three minutes had passed; his concentration was impaired, apparently because he was distracted by his pain; his abstract thinking was good; his judgment for social functioning was impaired; and his intelligence was average. (AR 239-240).

Dr. Malini diagnosed Claimant as suffering from a mood disorder, not otherwise specific, and an impulse control disorder, with a GAF of 50. (AR 240). He stated that Claimant had cognitive difficulties, but he could "understand, carry out, and remember simple instructions." (Id.). Further, he opined that Claimant had impairments with respect to his memory and concentration. In addition, Dr. Malini concluded that Claimant's

> [P]ersistence and pace is impaired due to his cognitive difficulties. His ability to get along with coworkers, supervisors, and the public is also impaired because of his poor impulse control and irritability. His ability to adjust to routine work situations and changes in routine work situations is impaired due to the above stated difficulties. His ability to manage money appears to be adequate.

AR 240-241.

The DDS nonexamining Mental RFC Assessment and Psychiatric Review Technique Form ("PRTF"), prepared, based on the available records as of January 2, 2003, and approved on May 6, 2003 (AR 197-214), reported, in a check-the-box form, that Claimant had moderate limitations in understanding, remembering, and carrying out detailed instructions. (AR 197). The narrative page, to the extent legible, reports that Claimant is capable of performing simple, repetitive tasks and has the

requisite concentration to complete the tasks, and that he could deal with the public. (AR 199). The PRTF indicates that there was "[I]nsufficient evidence to substantiate the presence of" (1) an organic mental disorder (AR 202); (2) schizophrenia, paranoid and other psychotic disorders (AR 203); (3) mental retardation (AR 205); (4) anxiety disorders (AR 206); (5) somatoform disorders (AR 207); (6) personality disorders (AR 208); (7) substance addiction disorders (AR 209); and (8) autistic and other developmental disorders (AR 210). The PRTF found that Claimant suffered from depression, as evidenced by his suffering loss of interest in almost everything, sleep disturbances, agitation or retardation, decreased energy, feelings of guilt or worthlessness, problems concentrating or thinking, and suicidal ideation.[7] (AR 204). With respect to Claimant's functional limitations, Claimant was deemed to be mildly limited as to activities of daily living and maintaining social functioning, and moderately limited in maintaining concentration, persistence, or pace. (AR 211). The consultant who prepared the PRTF did not provide any written narrative or notes regarding his conclusions or the Claimant. (AR 213).

Here, the ALJ gave little or no weight to the opinion of Claimant's treating therapist, Roxanne Fackler, LMFT, because she had only been treating Claimant for a few months, her opinions were not supported by any objective evidence, and, because she was not a licensed psychologist, she did not qualify as an acceptable medical source under 20 C.F.R. 416.913[(a)].[8] (AR 18-19) ALJ Ross also discounted Ms. Fackler's opinions because they were inconsistent with Claimant's actions at both of the administrative hearings, noting that Claimant had been attentive, slightly irritable, and able to concentrate. (AR 19). In addition, ALJ Ross pointed out that Claimant had not been or sought treatment for his alleged mental health problems for five years, and started seeing Ms. Fackler after the Appeals Council's remand order. (AR 20-21). The ALJ's discussion of his multiple reasons for rejecting Ms.

---

[7] The form requires only that Claimant has four of the symptoms that Claimant was found to have. (AR 204; 12.04 Affective Disorders). There were only two symptoms under "Depressive syndrome" that Claimant did not have" appetite disturbance/weight changes and hallucinations/delusions/paranoid thinking. (Id.; 12.04(1)).

[8] The restrictions as to whose opinions may be relied upon has been expanded pursuant to Social Security Ruling ("SSR") 06-03p. Under SSR 06-03p, the Commission may rely on opinions provided by sources other than those listed in 20 C.F.R. §§ 404.1514(a), 416.913(a), if he applies the same factors to these opinions; e.g., how long and how often the source treats the Claimant, the consistency of the source's opinion with other evidence, and whether the source specializes in an area related to Claimant's impairments. SSR 06-03p.

Fackler's opinions, especially when coupled with the contradictory findings of the consulting psychiatrists, constitutes "specific and legitimate reasons" based on the record evidence, from which he rendered his own, independent conclusions. Fair, 885 F.2d at 604-605 (quotations omitted); 20 C.F.R. §§ 416.913(a), 416.927(d)(2)-(6).

The ALJ also rejected some of the restrictions imposed by the examining psychiatric consultants, both of whom disagreed with the opinion of the treating physician after examining Claimant. (AR 17-18, 20-21). ALJ Ross summarized Dr. Ghaemian's 2002 assessment, noting that the doctor did not find that Claimant was depressed, and Claimant's reported paranoia and psychosis were inconclusive. (AR 18). The ALJ further stated that, although Dr. Ghaemian reported that Claimant had not appeared irritable or hostile during the consultation, he opined that Claimant could be a danger to others because of his anger and irritability, and further reported that Claimant would not be able to "maintain regular attendance or fulfill a normal workday, manage routine stressors or respond appropriately to instructions of a supervisor." (Id.). The ALJ discounted Dr. Ghaemian's evaluation, finding that, given the objective results and his diagnoses, including a GAF of 70, the doctor's report that Claimant could not work a full day and would not be able to attend a job on a regularly basis rendered the evaluation internally inconsistent. (AR 19). As to Dr. Malina's 2004 consultation, ALJ Ross noted that the doctor reported that Claimant could carry out simple instructions despite his impaired persistence and pace, but that he would have problems getting along with coworkers, supervisors, and the public due to his irritability and poor impulse control. (AR 18). The ALJ added that Dr. Malina also noted that Claimant's thought process was goal oriented and logical, he was not psychotic, he was of average intelligence and had a GAF of 50,[9] but impaired judgment, short-term memory, and an impaired ability to adapt to routine work situations and adapt to changes. (Id.). Again, the ALJ found that the examining psychiatrist's assessment was internally inconsistent because he imposed limitations that his examination did not support, although the ALJ did not explain to which restrictions he was referring. (AR 19). The ///

---

[9] A Global Assessment of Functioning of 50 indicates moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school function (e.g. few friends, conflicts with peers or co-workers). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

14

ALJ also seemed to discount Dr. Malina's evaluation because the doctor had read Ms. Fackler's opinion letters.  (Id.).

As to both consultants, but especially Dr. Ghaemian, the ALJ discounted their imposed limitations based on his observation of Claimant's demeanor, lucidity, cognitive ability, lack of indicia of inability to concentrate, and Claimant's lack of treatment.  (AR 20-21).  Although the ALJ's rationale for discounting Dr. Ghaemian's 2002 evaluation; i.e., that the objective examination and the doctor's observations were inconsistent and Dr. Ghaemian failed to provide any rationale for imposing the severe limitations, such as precluding Claimant from being able to fulfill a workday, in conjunction with the ALJ's observations during the hearings, arguably constitute substantial evidence for rejecting, in part, Dr. Ghaemian's findings, the ALJ's rationale for rejecting Dr. Malini's evaluation are insufficient.  (AR 19-21).  ALJ Ross's primary reasons for discounting this examining psychiatrist's evaluation appears to be that he read one of Ms. Fackler's opinion letters, implying that Dr. Malini adopted Ms. Fackler's diagnoses and restrictions.  (AR 19).  The ALJ also refers to his own observations during the hearings and Claimant's gap in obtaining mental heath treatment, but the former seems to be part of his rejection of Dr. Ghaemian's evaluation, and the latter is one of the basis for the ALJ's mental RFC determination.  (AR 20-21).  Accordingly, the ALJ failed to provide specific, legitimate reason, supported by substantial evidence, for rejecting Dr. Malini's opinion.  Widmark, 454 F.3d at 1066.

The ALJ gave substantial weight to the assessment prepared by the nonexamining DDS psychiatrist, Dr. Luyen T. Luu, based on the evidence in the record as of January 2, 2003, and affirmed on May 6, 2003 by Dr. Marina Vea.[10]  (AR 197-214).[11]  According to the ALJ, the assessment by the DDS physicians was consistent with the record evidence, including the examining consultants' assessments absent their inconsistent restrictions, and with Claimant's demeanor at the hearings. (AR 19).

---

[10] In January and May, 2003, there was a dearth of evidence upon which the DDS physicians could rely; the primary record evidence was comprised of Claimant's subjective problems included in the SSI application paperwork and Dr. Ghaemian's 2002 consultation.  (See AR 88 (irritable, isolated), 102 (depressed), 107 (irritable, anger resulting from physical pain), 109-10 (anger, depression), 174-79 (Nov. 2002 examining mental health consultation)).

[11] Although the ALJ refers to Exhibit 7F, the entire Mental RFC and Psychiatric Review Technique to which ALJ Ross refers includes both Exhibits 7F and 8F, which includes record pages.  AR 184-214.

Although the ALJ may give weight to the nonexamining DDS consultant's assessment, the ALJ must discuss the factors set forth in 20 C.F.R. § 416.927(a)-(e) with respect to the assessment, which ALJ Ross did not do in the instant case. See AR 20 C.F.R. § 416.927(f); (AR 19). Moreover, the nonexamining assessments generally cannot be accorded substantial weight, unless they are based on independent clinical findings. Lester, 81 F.3d at 831. The 2003 DDS assessments state that they were derived upon a review of the records, not independent clinical findings, and, therefore, the ALJ cannot give them substantial weight. Id.; (AR 297 at I. Summary Conclusions). In addition, the DDS assessment and PRTF upon which the ALJ relied consisted of "check the box" forms, which did not include a narrative explanation of the rationale for the limitations imposed, and, thus, is accorded little weight. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996).

The ALJ concluded that, given that Dr. Ghaemian's evaluation and Claimant's testimony throughout the hearings both revealed that Claimant had no cognitive problems or difficulties concentrating, coupled with the fact that he had not been treated for mental health problems in any manner for five years, and the ALJ's finding that Claimant's subjective testimony was less than credible, he determined that Claimant's suffered situational depression, which was a severe impairment. The ALJ determined, as did the nonexamining physicians and, to a lesser extent, Dr. Ghaemian, that, given Claimant's physical RFC to engage in light work with minor limitations, Claimant's mental limitations would enable him to work a full day performing simple, repetitive tasks in a job that enabled him to have minimal interaction with the public. (AR 20-22).

Based on the foregoing, the undersigned finds that the ALJ's determination of Claimant's mental RFC and concomitant limitations, based primarily on the nonexamining DDS physicians' assessments without independent clinical findings, adequate explanations, or compliance with the applicable regulations, necessitates a remand. The ALJ is instructed to address, specifically, whether the nonexamining physicians' assessments should have been accorded more weight than the examining consultants, and to consider and clarify the reasons for discounting portions of Dr. Ghaemian's report, and the reasons for rejecting Dr. Malini's evaluation, pursuant to the applicable regulations and this Circuit's caselaw.

///

**(B)   Incomplete Hypothetical Question posed to Vocational Expert**

Claimant asserts that the ALJ failed to pose a hypothetical question to the VE that included all of Claimant's limitations. (Doc. 20, p. 11). Specifically, Claimant noted that, although the ALJ found that Claimant suffered from moderate limitations in concentration, persistence, and pace, his hypothetical did not mention those limitations. (Id.). Claimant contends that, absent knowledge of all of Claimant's limitations, the VE's responses to a hypothetical question cannot be construed as evidence in support of the ALJ's decision. (Doc. 20, p. 12).

If an ALJ elicits testimony from a VE to ascertain, at step five, whether a claimant with specified capabilities and limitations would be able to perform jobs that exist in the national economy, the ALJ's failure to include all of the claimant's limitations and impairments renders the VE's responses devoid of any evidentiary value. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006); Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). The hypothetical question, however, need not include limitations that are not supported by record evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

In the instant case, after receiving additional records, the ALJ submitted his and Claimant's interrogatories to VE Chandler, in lieu of reconvening the hearing. (AR 147-151, 156-157). In the first hypothetical, the VE was presented with a 37 year old with a GED and a work history as a construction laborer, laborer/mover, and bus washer. The individual retains a physical RFC to lift 20 pounds occasionally, 10 pounds frequently; sit, stand, and walk 6 out of 8 hours; able to climb, balance, stoop, kneel, crouch, and crawl; but must avoid extreme cold and is limited to simple, repetitive tasks with minimal or no interaction with the public. (AR 153 at (10)). VE Chandler responded that the individual could not perform his past relevant work, as his RFC indicated a light/unskilled RFC with avoidance of cold and minimal public contact. She opined that the hypothetical person could be a janitor, a hand-packer, or an assembler, all of which had a minimum of 25,000 available jobs in California. (AR 153).

The second hypothetical question identified a person of the same age, education, and past relevant work, but further added that the individual had the following: impaired concentration, memory, ability to understand and remember instructions; moderately impaired judgment; suffers from anxiety, depression, and angry moods; has difficulty maintaining relationships with coworkers; cannot maintain

or sustain a work environment; uses crutches; can walk and stand for less than two hours with the use of an assistive device; and is in moderate to severe pain. (AR 153 at (11)). The VE again reported that the individual could not perform his past relevant work and, because he could not sustain an 8 hour day, there were no jobs in the national economy that he could do. (AR 153).

The ALJ found that there were jobs that Claimant could perform due to the RFC and limitations presented to the VE in the first hypothetical. (AR 153 at (10), 22-23). Although ALJ Ross found, in the body of his decision, that Claimant was, inter alia, "moderately restricted in his ability to maintain social functioning [and] moderately impaired in his ability to maintain concentration, persistence, and pace," (AR 14), he included none of these impairments, which are supported by examining consultant Dr. Malini's evaluation, in his ultimate RFC or in the question he posed to the VE. (See AR 20-23, 153 at (10), 238-241). Because the ALJ did not include these limitations in the hypothetical posed to the VE, although he found them valid, and they were based on substantial evidence that he rejected without providing an adequate reason, as discussed above, VE Chandler's testimony as to the jobs that Claimant could perform have no evidentiary value to support ALJ Ross's ultimate conclusion that Claimant was not disabled.[12] Robbins, 466 F.3d at 886; Light, 119 F.3d at 793.

Because the ALJ's hypothetical question to the VE did not include all of the limitations that he had found and were supported by substantial evidence, this case is REMANDED for further consideration of the actual limitations that the VE deems Claimant has and the formation, if necessary, of appropriate questions to pose to a vocational expert.

## CONCLUSION

For the reasons discussed above, this Court finds error in the ALJ's disability determination analysis and that such analysis was not based on proper legal standards. Accordingly, this Court ORDERS:

1.  That Claimant's Social Security complaint be GRANTED;
2.  That the matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further

---

[12] In addition, the ALJ did not question the VE as to whether the hypothetical individual could perform the suggested jobs as they were described in the Dictionary of Occupational Titles, which is required under Social Security Ruling 00-04p. See Massachi v. Astrue, 486 F.3d 1149 (9th Cir. 2007); SSR 00-4p.

consideration, consistent with this decision, (a) of whether the ALJ's determination of Claimant's limitations and restrictions due to his mental health was proper under the applicable rules, regulations, and caselaw, and (b) if necessary, the questioning of a vocational expert through the use of full and complete hypotheticals; and

    3.    That Judgment be ENTERED for Claimant Albert Phillips and against Defendant Michael J. Astrue.

IT IS SO ORDERED.

Dated: **September 21, 2007**　　　　　　　　　　　　　**/s/ Theresa A. Goldner**
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE